UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:19cv174 |
| v. | ) | |
| | ) | |
| GREGORY S. COONS, | ) | |
| ERIE CONSTRUCTION MID-WEST, | ) | |
| INC., | ) | |
| COMMUNITYWIDE FEDERAL CREDIT | ) | |
| UNION, FCC INVESTMENT TRUST I, | ) | |
| MIDLAND FUNDING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Comes now Plaintiff United States of America, by counsel, for and on behalf of its agency, U.S. Department of Agriculture (USDA), and for its cause of action alleges the following:

### JURISDICTION

1.     This Court has jurisdiction pursuant to 28 U.S.C. Section 1345 and venue is proper.

### COUNT ONE
### (Default on Promissory Note)

2.     On or about January 14, 1994, Edward A. and Franci C. Kessler

1

executed and delivered to plaintiff a promissory note in the principal sum of

$45,000.00. A copy of said note is attached hereto, made a part hereof, and

marked as "Exhibit 1."

3.   On November 23, 1998, Defendant Gregory S. Coons assumed the

obligation of the Kessler's under the promissory note pursuant to the

assumption agreement attached and made a part hereof as "Exhibit 2."

4.   On November 23, 1998, Defendant Gregory S. Coons executed

and delivered to plaintiff a promissory note in the principal sum of

$13,680.00. A copy of said note is attached hereto, made a part hereof, and

marked as "Exhibit 3."

5.   To secure payment of said promissory note, Defendant Gregory S.

Coons executed and delivered to plaintiff a mortgage on the following

described real estate in Jay County, to wit:

> Lot Numbered Twenty-nine (29) in the Replat of Hugh's Second
> Addition to the City of Portland, Jay County, Indiana, as recorded in
> Plat Book C, page 53, record of Jay County, Indiana.

Commonly known as: 108 Hickory Court, Portland, Indiana 47371.

This mortgage was recorded in the Office of the Recorder of Jay

County, Indiana, on November 23, 1998, Document No. 9804407, Page 1-7.

A copy of the mortgage is attached hereto, made a part hereof, and marked as

"Exhibit 4."

6.     On November 23, 1998, Defendant Gregory S. Coons executed a Subsidy Repayment Agreement. In sum, by this agreement the United States agreed to defer a portion of the accruing interest so long as there was no default, but in the event of a default, the credited interest becomes due as an *in rem* charge.   The Subsidy Repayment Agreement is attached hereto, made a part hereof, and marked as Exhibit "5."

7.     On May 3, 2002, Defendant Gregory S. Coons executed and delivered to plaintiff a promissory note in the principal sum of $4,967.00. A copy of said note is attached hereto, made a part hereof, and marked as "Exhibit 6."

8.     To secure payment of said promissory note, Defendant Gregory S. Coons executed and delivered to plaintiff a mortgage on the following described real estate in Jay County, to wit:

> Lot Numbered Twenty-nine (29) in the Replat of Hugh's Second Addition to the City of Portland, Jay County, Indiana, as recorded in Plat Book C, page 53, record of Jay County, Indiana.

Commonly known as: 108 Hickory Court, Portland, Indiana 47371.

This mortgage was recorded in the Office of the Recorder of Jay County, Indiana, on May 8, 2002, Document No. 0201912, Page 1-7.   A copy of the mortgage is attached hereto, made a part hereof, and marked as "Exhibit 7."

3

9.   Plaintiff is the holder of the promissory notes, mortgage, and Subsidy Agreement.

10.   Defendant Gregory S. Coons is in default in repayment of the obligations due to Plaintiff under the terms of the Note and Subsidy Agreement.

11.   The Plaintiff accelerated the indebtedness and made demand for payment in full, and no payment has been received.   All conditions precedent to the assertion of this cause of action against Defendant Gregory S. Coons has been satisfied and/or have occurred.

12.   Defendant Gregory S. Coons owes Plaintiff, pursuant to the notes and mortgages, the sum of $132,752.33, consisting of $95,813.42 in principal and $27,126.77 in accrued interest as of March 27, 2019, with interest thereafter at the rate of $14.9697 per day to the date of judgment, plus interest credit under the Subsidy Agreement in the sum of $9,812.14.   In addition, the government may incur additional costs and expenses associated with the preservation and sale of the real property, which may become due and owing under the terms of the note and mortgage.

## COUNT TWO

## (Foreclosure)

13.   Plaintiff restates and incorporates by reference allegations 1 through 12 as though fully stated herein.

14.   Defendant CommunityWide Federal Credit Union is made a defendant to answer as to its interest in the real estate by virtue of a judgment in the amount of $3,312.00 plus costs, entered on May 29, 2018, as Cause No, 38D01-1711-CC-0001197, in Jay County Superior Court.

15.     Defendant Midland Funding, LLC is made a defendant to answer as to its interest in the real estate by virtue of a judgment in the amount of $1,212.00 plus costs, entered on July 24, 2017, as Cause No, 38D01-1706-CC-000116, in Jay County Superior Court.

16.     Defendant Gregory S. Coons was discharged from liability on the note in a Chapter 7 Bankruptcy proceeding filed June 29, 2010 in the United States Bankruptcy Court, Northern District of Indiana, Case 10-12870-reg.

17.     Defendant Erie Construction Mid-West, Inc. is made a defendant to answer as to its interest in the real estate by Payment and Release of a Mortgage from Gregory S. Coons in the amount of $12,096.00 dated October 22, 2004 and recorded March 30, 2005 as Instrument No. 0500941 in Jay County Records.

5

18.     Defendant FCC Investment Trust I is made a defendant to answer as to its interest in the Assignment of Mortgage of real estate by Payment and Release of a Mortgage from Gregory S. Coons recorded as Instrument No. 0801724 in Jay County Records.

19.   The mortgage of Plaintiff is prior and paramount to the interest of all other parties to this action.

WHEREFORE, Plaintiff respectfully prays that the Court:

A. Enter judgment *in rem* judgment against the mortgaged real estate in the amount of $132,752.33, together with interest accruing after March 27, 2019 to date of judgment at the rate of $14.9697 per day, plus any such further costs and expenses as may be incurred to the date of sale of the property, and all other costs herein;

B. Enter an order declaring Plaintiff's mortgage to be prior and paramount to the interests of all other parties and determining the amount and priorities of the interests of all parties to the real estate; and an order foreclosing the equity of redemption of defendant in the real estate;

C. Enter an order directing the sale of the property by the U.S. Marshall and application of the proceeds first to the costs of sale, second to payment of the judgment of Plaintiff, with any then-

remaining proceeds paid to the Clerk of the Court to be disposed of

as the Court shall direct;

D. Issue a Writ of Assistance upon proper Praecipe if the purchaser of

the real estate be denied possession; and

E. Award such other and further relief as is just and proper in the

premises.

Respectfully submitted,

THOMAS L. KIRSCH II
UNITED STATES ATTORNEY


By:     *s/Deborah M. Leonard*
        Deborah M. Leonard
        Assistant United States Attorney
        United States Attorney's Office
        Northern District of Indiana
        E. Ross Adair Federal Bldg, U.S. Courthouse
        1300 South Harrison Street, Room 3128
        Fort Wayne, IN 46802-3489
        Tel:   (260) 422-2595
        Fax: (260) 426-1616
        Email: deborah.leonard@usdoj.gov

7

USDA-FmHA
Form FmHA 1940-16
(Rev. 4-91)

**PROMISSORY NOTE**

| TYPE OF LOAN |
|---|
| RH |

| STATE | Indiana |
|---|---|
| COUNTY | Jay |
| CASE NO. | 15-38-373804561 |

Date _____ January 14 ____, 19 94 .

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration,

United States Department of Agriculture, (herein called the "Government") at its office in __Decatur, IN 46733__

THE PRINCIPAL SUM OF __Forty five thousand and 00/100 ----------------------__

DOLLARS ($ 45,000.00 _____ ), plus INTEREST on the UNPAID PRINCIPAL of

SIX AND ONE HALF _____ PERCENT ( 6 1/2 __ %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I.   Principal and Interest payments shall be deferred. The interest accrued to _____; 19___

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of

such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.   Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each _____ beginning on _____ , 19___, through _____ , 19___,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☒ III.   Payments shall not be deferred. Principal and Interest shall be paid in __396_____ installments as indicated in the box below:

| $ 277.00 _____ on ____February 14_____ ; 19 94 , and |
|---|
| $ 277.00 _____thereafter on the __14th__ of each __Month__ |
| until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness |
| evidenced hereby, if not sooner paid, shall be due and PAYABLE __Thirty three__ ( __33__ )YEARS |
| from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments. |

**EXHIBIT 1**

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

SUBSIDY REPAYMENT AGREEMENT: Borrower agrees to the repayment (recapture) of subsidy granted in the form of interest credits. Subsidy will be repaid when the borrower's account is settled by sale of the security property, refinancing or payment in full and will be calculated in accordance with regulations in effect at the time of settlement. Recapture is based on property appreciation and can equal all, some or none but never exceed the amount of subsidy received.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

WARNING: Failure to fully disclose accurate and truthful financial information may result in the termination of program assistance currently being received, and the denial of future program assistance under USDA's Debarment regulations, 7 CFR Part 3017.

**EXHIBIT 1**

Presentment, protest, and notice are hereby waived.

/s/Edward A. Kessler                     (SEAL)
Edward A. Kessler        (BORROWER)

/s/Franci C. Kessler                     (SEAL)
Franci C. Kessler        (CO-BORROWER)


108 Hickory Court

Portland, IN 47371

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $45 000.00 | 1-14-94 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ | |

**EXHIBIT 1**

Sub loan act 1

FORM APPROVED
OMB No. 0575-0086

**USDA-RHS**
Form FmHA 1965-15
(Rev. 10-96)

**ASSUMPTION AGREEMENT**
**Single-Family Housing Loans**

Type of Loan _____

[X] Sec. 502  [ ] Non Program  [ ] Sec. 504

Loan Number

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue. S.W., Washington, D.C. 20250-7602. Please **DO NOT RETURN** this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB control number.

This Agreement dated _____November 23, 1998_____ , is between the United States of America, acting through the Rural Housing Service (RHS) and its successors and assigns (herein called the Government, and _____Gregory S Coons_____

(herein called Borrower), whose mailing address is _____RR 1 Box 252A, Redkey, IN  47373_____

The Government is the holder of one or more debt instrument secured by one or more of the following described security instruments executed by _____Edward A. Kessler & Franci C. Kessler_____

Case Number _____0004206621_____ , on real property described therein which is located in _____Jay_____ County, State of _____Indiana_____ :

| Type Instrument | Date Executed | Office Where Recorded | Book/Volume/ Document Number | Page Number |
|---|---|---|---|---|
| R.E. Mortgage | 01/14/1994 | Jay | 199 | 000594 |
| | | | | |
| | | | | |

In consideration of the assumption of indebtedness as herein provided and the Government's consent to this assumption and related conveyance of the security property, if applicable, it is agreed as follows:

1. Borrower hereby assumes liability for and agrees to pay to the order of the Government at the RHS office shown below (or other location as may later be specified) the principal sum of _____Forty Two Thousand Eight Hundred Sixteen Dollars &_____ 84/Cents _____ dollars ($_____42,816.84_____ ) plus interest at the rate of _____Six and Three Eighths_____ percent (_____6.375_____ %) per annum, payable in installments as follows:

$_____259.28_____ on _____December 23, 1998_____ , and

$_____259.28_____ thereafter on the _____23rd_____ of each _____month_____ until the principal and interest are fully paid, except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable _____Thirty Three_____ (_____33_____ ) years from the date of this Agreement.

2. Payments of principal and interest shall be applied in accordance with Government's accounting procedures in effect on the date of receipt of the payment. If Borrower's payment has not been received by the end of 15 days after it is due, Borrower will pay a late charge in the amount of 4% of the overdue payment of principal and interest.

3. The provisions of the debt instruments hereby assumed shall, except as modified herein, remain in full force and effect, and Borrower hereby assumes the obligations of and agrees to comply with all covenants, agreements, and conditions contained in said instruments, as modified herein, as though Borrower had executed them as of the date thereof as principal obligors. Nothing contained herein shall be construed to release the transferor from liability on the above described debt instruments.

4. Any provisions of the debt and security instruments which require that the borrower occupy the Government-financed dwelling or refinance to another credit source do not apply to assumption on Non Program terms.

5. This Agreement is subject to present regulations of the Government and to its future regulations which are not inconsistent with the express provisions hereof.

_____
(Co-signer)

UNITED STATES OF AMERICA
RURAL HOUSING SERVICE

By _____Anthony Kirkland_____
Anthony Kirkland

Title _____Community Development Manager_____

Date _____11-16-98_____

_____
Gregory S. Coons                Borrower

_____
Borrower

Account # 0016398925 _ ͻ

RHS Field Office Address: _____210 E. MONROE ST., BOX 4020, Decatur, IN  46733_____

FmHA 1965-15 (Rev. 10-96)

RECEIVED NOV 2 5 1998

**EXHIBIT 2**

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

Type of Loan SECTION 502       Loan No.       608

Date: __November 23__ , __1998__

<u>108 Hickory Court</u>
(Property Address)

<u>Portland</u> , <u>Jay</u> , <u>Indiana</u>
(City or Town)       (County)       (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ _13,680.00_ (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of _6.375_ %.The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

☐ I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $ _____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

☒ II. Payments shall not be deferred. I agree to pay principal and interest in _396_ installments as indicated in the box below.

> I will pay principal and interest by making a payment every month.
> I will make my monthly payment on the _23rd_ day of each month beginning on _December 23, 1998_ and continuing for _395_ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on _November 23_ ,_2031_ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
> My monthly payment will be $ _82.84_ . I will make my monthly payment at _the post office address noted on my billing statement_ or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1

RECEIVED NOV 2 5 1998

**EXHIBIT 3**

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of 15 days after the date it is due, I will pay a late charge. The amount of the charge will be 4.000 percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account #        508

**EXHIBIT 3**

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_Gregory S Goans_ _____ Seal    _____ Seal
   Borrower           Borrower

_____ Seal    _____ Seal
   Borrower           Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| TOTAL $ | | | | | |

Account #:    608

3

RECEIVED NOV 2 5 1998

**EXHIBIT 3**

$608$

I certify that this is a true and
correct copy of the within document.
11/23/98 _____

RECEIVED FOR RECORD

at __11:26__ o'clock ____M

Doc. __9804405__ Page __1-7__

NOV 23 1998

*Judith S. Master*
Recorder, Jay County

[Space Above This Line For Recording Data]

Form RD 3550-14 IN
(4-98)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

## MORTGAGE FOR INDIANA

THIS MORTGAGE ("Security Instrument") is made on November 23, 1998 , . [Date]
The mortgagor is    Gregory S. Coons
("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor
agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized
Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively
called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full
debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| 11/23/98 | $13,680.00 | 11/23/2031 |
| 1/14/94 | 45,000.00 | 1/14/2027 |
| (1/14/94 note assumed by mortgagor in the amount of $42,816.84) | | |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which
may be granted to the Borrower by the Lender pursuant to 42 U.S.C. § 1472(g) or 1490(a). For this purpose, Borrower does
hereby mortgage, grant and convey to Lender the following described property located in
County , Indiana:

[See attached Exhibit A for Legal Description]

which has the address of    108 Hickory Court, Portland                        , Indiana 47371
                            [Street]                                [City]              [ZIP]
("Property Address");

---

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB
control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collec-
tion is estimated to average 15 minutes per response, including the time for reviewing instruction, searching existing data sources, gathering and
maintaining the data needed, and completing and reviewing the collection of information.*

Initials  G S C

Page 1 of 6

RECEIVED NOV 2 5 1998

**EXHIBIT 4**

Lot Numbered Twenty-nine (29) in the Replat of Hugh's
Second Addition to the City of Portland, Jay County,
Indiana, as recorded in Plat Book C, page 53, record
of Jay County, Indiana.

EXHIBIT A

(Gregory S. Coons mortgage)

Initials: *GSC*

**EXHIBIT 4**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days

Initials  G S C

Page 2 of 6

RECEIVED NOV 2 5 1998

**EXHIBIT 4**

of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a reasonable cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the

Initials _G S C_

RECEIVED NOV 2 5 1998

**EXHIBIT 4**

fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15. **Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

17. **Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

18. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

19. **Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Initials  G S C                                                                                Page 4 of 6

RECEIVED NOV 2 5 1998

**EXHIBIT 4**

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. **Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Lender, at its option, with or without notice may: (a) declare the entire amount unpaid under the Note and any indebtedness to the Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

23. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Lender's option, any other indebtedness of Borrower owing to the Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Lender and its agents may bid and purchase as a stranger and may pay the Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to the Lender, in the order prescribed above.

24. Borrower agrees that the Lender will not be bound by any present or future state laws prescribing any statute of limitations or limiting the conditions which the Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such state laws. Borrower hereby waives, to the fullest extent Borrower may lawfully do so under state law, the benefit of all state laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, or (c) allowing any right of redemption or possession following any foreclosure sale. Borrower also hereby relinquishes, waives and conveys all rights, inchoate or consummate, of descent, dower, curtesy, and homestead.

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider ☐ Planned Unit Development Rider ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument.

_____(Seal)
                    Borrower

_____(Seal)
                    Borrower

Initials  G S C                                                    Page 5 of 6

**EXHIBIT 4**

### ACKNOWLEDGMENT

STATE OF INDIANA     ) }
COUNTY OF __JAY__     ) } *ss :*

Before me, _____ __Philip A. Frantz__ _____, a Notary Public, this ____23rd____ day of __November, 1998,____ __Gregory S. Coons__ __—and__ ____ __appeared and__ _____ acknowledged the execution of the annexed mortgage.

(SEAL)

    Philip A. Frantz     *Notary Public*

    Jay County, Indiana
    County and State of Residence

My commission expires____ __December 27, 1998__ ____

*Print, stamp or typewrite the names of the mortgagors and the notary just beneath their signatures.*

**Preparer's Statement**
The form of this Mortgage was prepared by the Office of the General Counsel, United States Department of Agriculture and the material in the blank spaces was inserted by or under the direction of:

__Philip A. Frantz__ ____
(Name)
__P.O. Box 1013_____
(Address) Portland, IN 47371

(Signature)

Initials __G S C__

Page 6 of 6

**EXHIBIT 4**

Form RHS 3550-12
(10-96)

Form Approved
OMB No. 0575-0166

United States Department of Agriculture
Rural Housing Service

Account #:          608

## SUBSIDY REPAYMENT AGREEMENT

1.   As required under Section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with Section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2.   When I fail to occupy or transfer title to my home, recapture is due.  If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated.  If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full.  In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3.   Market value at time of initial subsidy $ __56,500.00__  less amount of Rural Housing Service (RHS) loans $__56,500.00__  less amount of any prior liens $_____ equals my/our original equity $_____.  This amount equals __0.0__ % of the market value as determined by dividing original equity by the market value.

4.   If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans.  Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | Average interest rate paid | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6.   Calculating Recapture
Market value (at the time of transfer or abandonment)
LESS:
Prior liens
RHS balance,
Reasonable closing costs,
Principal reduction at note rate,
Original equity (see paragraph 3), and
Capital improvements.
EQUALS
Appreciation Value. (If this is a positive value, continue.)
TIMES
Percentage in paragraph 4 (if applicable),
Percentage in paragraph 5, and
Return on borrower's original equity (100% - percentage in paragraph 3).
EQUALS
Value appreciation subject to recapture.  Recapture due equals the lesser of this figure or the amount of subsidy received.

| Borrower | Date |
|---|---|
| Gregory S. Coons | 11/23/98 |
| Borrower | Date |
| Gregory S. Coons | 11/23/98 |

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602.  Please DO NOT RETURN this form to this address.  Forward to the local USDA office only.  You are not required to respond to this collection of information unless it displays a currently valid OMB control number.

RECEIVED NOV 2 5 1998

**EXHIBIT 5**

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

Type of Loan SECTION 504                                      Loan No.        439

Date: __May 03_____ , _2002_

<div align="center">

_____108 Hickory Court_____
(Property Address)

__Portland_____ , __Jay_____ , __Indiana_____
(City or Town)              (County)              (State)

</div>

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ _4,967.00_____ (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of __1.000___ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

[  ] I.  Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

[x] II.  Payments shall not be deferred. I agree to pay principal and interest in __240_____ installments as indicated in the box below.

<div style="border:1px solid black; padding:4px;">

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the _3rd_ day of each month beginning on __June 03___ , _2002_ and continuing for _239_ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on _May 03_____ , _2022_ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ _22.85_____ . I will make my monthly payment at _the post office address noted on my billing statement_____ or a different place if required by the Government.

</div>

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

<div align="center">1</div>

**EXHIBIT 6**

**LATE CHARGES.** If the Government ( not received the full amount of any m( ly payment by the end of <u>15</u> days after the date it is due, I will pay a late charge. The amount of the charge will be <u>4.000</u> percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account #       439

**EXHIBIT 6**

*Coons, Greg*

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at <u>USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166</u>, or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING:** Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

| _Greg S. Coons_ | Seal | | Seal |
|---|---|---|---|
| Borrower | | Borrower | |
| | Seal | | Seal |
| Borrower | | Borrower | |

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

Account #:          39

3

**EXHIBIT 6**

RECEIVED FOR RECORD
*9:52* o'clock _A_ M
Doc _0201912_ Page _1-7_

MAY 08 2002

*Judith S. Master*
Recorder, Jay County

---

[Space Above This Line For Recording Data]

Form RD 3550-14 IN
(Rev. 4/98)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

### MORTGAGE FOR INDIANA

THIS MORTGAGE ("Security Instrument") is made on    May 3                    , 2002[Date]
The mortgagor is    Gregory S. Coons
                                                                                         ("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| May 3, 2002 | $4,967.00 | May 3, 2022 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. § 1472(g) or 1490(a). For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
County , Indiana:

### [See attached Exhibit A for Legal Description]

which has the address of    108 Hickory Court, Portland                    , Indiana    47371
                                                    [Street]                                [City]                        [ZIP]
("Property Address");

---

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instruction, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

Initials _____  _____

MAY 13 2002

Page 1 of 6

# 0201912

PAGE ____/____

**EXHIBIT 7**

Lot Numbered Twenty-nine (29) in the Replat of Hugh's Second Addition to the City of Portland, Jay County, Indiana, as recorded in Plat Book C, page 53, record of Jay County, Indiana.

EXHIBIT A

(Gregory S. Coons mortgage)

PAGE 2

**EXHIBIT 7**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days

Initials _____ _____


PAGE 3

**EXHIBIT 7**

of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the

Initials ___ ___

Page 3 of 6

**EXHIBIT 7**

fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Initials _____  _____                                                         Page 4 of 6

 PAGE 5

**EXHIBIT 7**

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Lender, at its option, with or without notice may: (a) declare the entire amount unpaid under the Note and any indebtedness to the Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Lender's option, any other indebtedness of Borrower owing to the Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, the Lender and its agents may bid and purchase as a stranger and may pay the Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to the Lender, in the order prescribed above.

**24.** Borrower agrees that the Lender will not be bound by any present or future state laws prescribing any statute of limitations or limiting the conditions which the Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such state laws. Borrower hereby waives, to the fullest extent Borrower may lawfully do so under state law, the benefit of all state laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, or (c) allowing any right of redemption or possession following any foreclosure sale. Borrower also hereby relinquishes, waives and conveys all rights, inchoate or consummate, of descent, dower, curtesy, and homestead.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument.

_Gregory S. Coons_____ (Seal)
                              Borrower

_____ (Seal)
                              Borrower

Initials ___ ___

Page 5 of 6

**EXHIBIT 7**

**ACKNOWLEDGMENT**

STATE OF INDIANA        )
                        )  *ss :*
COUNTY OF ___JAY___     )

Before me, __Eliza R. Alanis_____, a Notary Public, this

__3rd_____ day of __May_, _2002_, __Gregory S. Coons_____ ~~and~~

_____appeared and_____ acknowledged the execution of the annexed mortgage.

*(SEAL)*

_____Eliza R. Alanis_____
\* Eliza R. Alanis                          *Notary Public*

Adams County, Indiana
County and State of Residence

~~ELIZA R. ALANIS~~
Notary Public, State of Indiana
County of Adams
My Commission Expires Mar 30, 2007

My commission expires __March 30, 2007_____

*Print, stamp or typewrite the names of the mortgagors and the notary just beneath their signatures.*

**Preparer's Statement**
The form of this Mortgage was prepared by the Office of the General Counsel, United States Department of Agriculture and the material in the blank spaces was inserted by or under the direction of:

__Claudia J. Karges_____          _____Claudia J. Karges_____
(Name)                                   (Signature)
210 E. Monroe St., Decatur, IN 46733
(Address)

Initials ___ ___

\#_0201912_ Page 6 of 6

~~PAGE~~ _7_

**EXHIBIT 7**

# UNITED STATES DISTRICT COURT

for the

Northern District of Indiana

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:19cv174 |
| | ) | |
| GREGORY S. COONS, ET AL | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  GREGORY S. COONS
20399 Birch Rd
Mentone, IN 46539

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Deborah M. Leonard
> Assistant United States Attorney
> United States Attorney's Office-NDIN
> 5400 Federal Plaza, Suite 1500
> Hammond, IN 46320

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Indiana

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff* | ) |
| | ) |
| v. | ) |
| | ) |
| GREGORY COONS, ET AL | ) |
| *Defendant* | ) |

Civil Action No.   1:19cv174

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   COMMUNITYWIDE FEDERAL CREDIT UNION
Attn: Executive Office or President
1555 Western Avenue
South Bend, IN 46619

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Deborah M. Leonard
Assistant United States Attorney
United States Attorney's Office-NDIN
5400 Federal Plaza, Suite 1500
Hammond, IN 46320

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐  I returned the summons unexecuted because _____ ; or

❐  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Indiana

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| _Plaintiff_ | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:19cv174 |
| | ) | |
| GREGORY S. COONS, ET AL | ) | |
| _Defendant_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   ERIE CONSTRUCTION MID-WEST, INC.
c/o CT Corporation System
Registered Agent
150 West Market Street, Suite 800
Indianapolis, IN 46204

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Deborah M. Leonard
Assistant United States Attorney
United States Attorney's Office-NDIN
5400 Federal Plaza, Suite 1500
Hammond, IN 46320

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Northern District of Indiana

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:19cv174 |
| | ) | |
| GREGORY S. COONS, ET AL | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   FCC INVESTMENT TRUST I
c/o Highest Officer
1345 Avenue of the Americas, 6th Floor
New York, NY 10105

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Deborah M. Leonard
Assistant United States Attorney
United States Attorney's Office-NDIN
5400 Federal Plaza, Suite 1500
Hammond, IN 46320

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐  I returned the summons unexecuted because _____ ; or

❐  Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Indiana

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| _Plaintiff_ | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:19cv174 |
| | ) | |
| GREGORY S. COONS, ET AL | ) | |
| _Defendant_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  MIDLAND FUNDING, LLC
c/o Corporation Service
Registered Agent
135 N. Pennsylvania St., Ste 1610
Indianapolis, IN 46204

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Deborah M. Leonard
Assistant United States Attorney
United States Attorney's Office-NDIN
5400 Federal Plaza, Suite 1500
Hammond, IN 46320

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

UNITED STATES OF AMERICA

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Deborah M. Leonard, Assistant United States Attorney
USAO - 1300 South Harrison Street, Room 3128
Fort Wayne, IN 46802; Tel: (260) 422-2595

## DEFENDANTS

GREGORY S. COONS , ET AL

County of Residence of First Listed Defendant    JAY
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC § 1345fc
Brief description of cause:
Federal Foreclosure

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
04/19/2019

SIGNATURE OF ATTORNEY OF RECORD
s/Deborah M. Leonard

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____